AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
## for the
Western District of Washington

| | |
|---|---|
| FILED | LODGED |
| | RECEIVED |
| **Jan 06, 2021** | |
| CLERK U.S. DISTRICT COURT | |
| WESTERN DISTRICT OF WASHINGTON AT TACOMA | |
| BY | DEPUTY |

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
The items more fully described in )
Attachments A1 through A11 )
)

Case No.   MJ21-5001

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
the items more fully described in Attachments A1 through A11, incorporated herein by reference,

located in the ___Western___ District of ___Washington___ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841/846 | Drug trafficking/conspiracy |
| 18 U.S.C. § 1956 | Money laundering |

The application is based on these facts:

☑ See Affidavit of DEA TFO Luke Brandeberry, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Luke Brandeberry, Task Force Officer
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   ___01/06/2021___

*Judge's signature*

City and state:  Tacoma, Washington

J. Richard Creatura, United States Magistrate Judge
*Printed name and title*

---

# AFFIDAVIT

STATE OF WASHINGTON )
) ss
COUNTY OF PIERCE )

I, Luke A. Brandeberry, Task Force Officer, Drug Enforcement Administration, United States Department of Justice, being first duly sworn on oath, depose and state:

## I.   AFFIANT BACKGROUND AND QUALIFICATIONS

1.      I am a Task Force Officer (TFO) of the Drug Enforcement Administration (DEA), currently assigned to the Tacoma Resident Office, located within the Seattle, Washington, Field Division.  As such, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.  I have been a TFO since February 2019.  I am a commissioned law enforcement officer of the Kent Police Department.  I have a total of 13 years' experience as a police officer.  During my time as a police officer, I have worked uniformed patrol, as well as plain clothes investigations.  As a detective with the Kent Police Department Special Investigations Unit and a TFO with the DEA, I have participated in hundreds of investigations that involved drug-related offenses.  These cases involved the use of undercover agents and confidential sources to investigate the trafficking of methamphetamine, heroin, cocaine, ecstasy, firearms, and various abused prescription drugs.  In many of these cases, I acted as the case agent, confidential source handler, and/or undercover purchaser.

2.      I am a graduate of McDaniel College, and hold a bachelor's degree in Sociology with emphasis in Criminal Justice.  In 2007, I completed a six-month entry-level police academy in Montgomery County, Maryland.  Since then, I have received over 300 hours of instruction specific to controlled substance and financial investigations.

3.      I am responsible for investigations involving specified unlawful activities, to include the distribution of methamphetamine, heroin, and cocaine in the Western

AFFIDAVIT OF TFO BRANDEBERRY - 1
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

District of Washington.  I am also responsible for enforcing federal narcotics laws and related statutes in the Western District of Washington.  I received training on the proper investigative techniques for these violations, including the use of confidential sources, undercover agents/officers, the identification of drug trafficking organizations and identifying the movement of narcotics and narcotic proceeds to and from Western Washington.  I have actively participated in investigations of criminal activity, including but not limited to crimes against persons, crimes against property, and narcotics-related crimes.  During these investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the commission of criminal violations. As a law enforcement officer, I have testified under oath, attested to applications in support of search and arrest warrants, and obtained electronic monitoring orders.  I have also assisted with several Title III (i.e., wiretap) investigations during my time as a DEA TFO.  During those wiretap investigations, I have worked in the wire room where I have gained experience with minimization and evidence gathering from this type of investigation.

4.      I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking.  I have discussed and learned from other law enforcement investigators about these matters as well.

5.      Through my training and experience, I have encountered and become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, export, conceal and distribute controlled substances.  I am also familiar with the way drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations, and how they code their conversations to disguise their unlawful activities.

6.      I have obtained the facts set forth in this Affidavit through my personal participation in the investigation described below; from oral and written reports of other

AFFIDAVIT OF TFO BRANDEBERRY - 2
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  law enforcement officers; from witnesses and informants cooperating with law

2  enforcement; and from records, documents and other evidence obtained during this

3  investigation.  I have obtained and read official reports prepared by law enforcement

4  officers participating in this investigation and in other investigations.

5       7.    In addition, I have initiated, planned, and executed many narcotics search

6  warrants that resulted in the arrest of suspects and the seizure of evidence.  I have

7  contacted, interviewed, and arrested numerous subjects for the possession, use, sale,

8  distribution, delivery, and manufacture of illicit narcotics.  I have become educated,

9  trained and experienced with the terms, trends, habits, commonalties, methods, and

10  idiosyncrasies surrounding illicit narcotics possession, use, distribution, manufacture,

11  business and culture.

12       8.    When this Affidavit refers to GPS location data, either I or other agents

13  involved in the investigation have received the information from the telephone company

14  pursuant to a court-authorized warrant.

15       9.    During the course of this investigation I have had the opportunity to listen

16  to, and review transcripts and line sheets (prepared by linguists) documenting the content

17  of, hundreds of intercepted conversations, and read text messages involving the

18  trafficking of methamphetamine, heroin, and other narcotics.  I know through training

19  and experience, including my experience with this investigation, individuals involved in

20  the distribution of controlled substances and other criminal activity often use coded

21  words and inferences when referring to their illegal activity.  Linguists monitored the

22  intercepted communications referred to in this Affidavit; the linguists also have training

23  and experience in monitoring and documenting intercepted calls and text messages, and

24  in interpreting coded drug-related conversations and vague references to drug trafficking.

25  I have included summaries of conversations, which are based on my review of the line

26  sheets (and, transcripts, where available) of intercepted communications, and from my

27  own experience and from discussions with other experienced law enforcement officers

28  familiar with this investigation who have reviewed the line sheets.  In this Affidavit, I

AFFIDAVIT OF TFO BRANDEBERRY - 3
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

include pertinent portions of intercepted communications (obtained through court authorization), but have not necessarily included the entire conversations between the parties involved.  All intercepted calls and text messages referenced in this Affidavit that occurred in Spanish were monitored by linguists who have training and experience monitoring and documenting intercepted communications in Spanish.  Unless otherwise noted, the communications detailed in this Affidavit occurred in Spanish, and the English translations as provided by the linguists are set forth.

10.     When providing summaries of calls, text messages, events, and surveillance observations/operations, all the times listed are approximate.

11.     Because I am submitting this Affidavit to establish probable cause to search the items described further below, this Affidavit does not contain every fact known to me or learned during this investigation.  Instead, I have set forth only the facts that I believe are essential to establish the necessary foundation for the issuance of such warrants and a fair determination of probable cause.

## II.     PURPOSE OF AFFIDAVIT

12.     I am submitting this Affidavit in support of an application to search the following items as further described in Attachments A1 to A11, for evidence, fruits and instrumentalities of drug trafficking and money laundering crimes committed by a drug trafficking organization (DTO) referred to in this Affidavit as the VAZQUEZ/VALDEZ DTO, and its associates, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and 952, and Title 18, United States Code, Sections 924(c), 1956, and 1957, as further described in Attachment B:

a.     A red Infiniti G50 with California license plate 7YZX305 (SUBJECT VEHICLE 1);

b.     A black Chevy Silverado with California license plate DLR86963 (SUBJECT VEHICLE 2);

c.     A silver Ford Raptor with California license plate 12858A3 (SUBJECT VEHICLE 3);

AFFIDAVIT OF TFO BRANDEBERRY - 4
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.      A black Samsung cellular telephone located in Cesar VALDEZ-SANUDO's shirt pocket at the time of his arrest on December 16, 2020 (SUBJECT DEVICE 1);

e.      A black LG cellular telephone located on Jose Luis ARREDONDO-VALDEZ's person at the time of his arrest on December 16, 2020 (SUBJECT DEVICE 2);

f.      A black Samsung cellular telephone located in the driver's door of the red Infiniti G50 (SUBJECT DEVICE 3);

g.      A black LG cellular telephone, assigned IMEI 355041613233365, located in the center console of the red Infiniti G50 (SUBJECT DEVICE 4);

h.      A black LG cellular telephone, assigned IMEI 355041613860712, located in a blue leather zipper bag located on the front passenger seat floorboard area of the red Infiniti G50 (SUBJECT DEVICE 5);

i.      A black LG cellular telephone, assigned IMEI 355041613860738, also located in a blue leather zipper bag located on the front passenger seat floorboard area of the red Infiniti G50 (SUBJECT DEVICE 6);

j.      A black LG cellular telephone, assigned IMEI 354544116218974, also located in a blue leather zipper bag located on the front passenger seat floorboard area of the red Infiniti G50 (SUBJECT DEVICE 7); and

k.      Two Apple iPhones found in the possession of Aaron ALARCON-CASTANEDA at the time of his arrest on December 16, 2020 (SUBJECT DEVICES 8 and 9).

13.      All of these items are presently in the secure custody of law enforcement, in Tacoma and/or Puyallup (Pierce County).

## III.      SUMMARY OF PROBABLE CAUSE

14.      For more than 22 months, law enforcement has been investigating a DTO operating in the Western District of Washington, a portion of which is managed by leaders Omar VAZQUEZ-LIMON and Cesar VALDEZ-SANUDO (the VAZQUEZ/VALDEZ DTO).  Investigators conducted countless hours of surveillance, utilized various investigation methods and tools, made controlled purchases of drugs

AFFIDAVIT OF TFO BRANDEBERRY - 5
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  from the VAZQUEZ/VALDEZ DTO, and intercepted numerous drug-related telephone
2  calls and text messages with court authorization.

3       15.    On December 9, 2020, a grand jury in the Western District of Washington
4  indicted 11 DTO members, to include Cesar VALDEZ-SANUDO, Jose Luis
5  ARREDONDO-VALDEZ, Yvette OLGUIN, and Aaron ALARCON-CASTANEDA.
6  The three-count Indictment included a drug trafficking conspiracy charge against all 11
7  members of the DTO; a drug distribution count against VALDEZ-SANUDO,
8  ALARCON-CASTANEDA, and another DTO member; and a money laundering
9  conspiracy count against VALDEZ-SANUDO and another DTO member.  United States
10  Magistrate Judge Brian A. Tsuchida issued arrest warrants for the 11 individuals that
11  same day.

12       16.    On December 11, 2020, United States Magistrate Judge Charles F. Eick
13  (Central District of California) authorized the search of the person of Aaron ALARCON-
14  CASTANEDA and his primary residence at 4292 Walnut Ave #B, Chino, California.

15       17.    On December 14, 2020, United States Magistrate Judge Brian A. Tsuchida,
16  authorized the search of the primary residence of Cesar VALDEZ-SANUDO at 21916
17  123rd Ave NE, Arlington, Washington, among other locations.

18       18.    On December 16, 2020, agents in the Western District of Washington and
19  Central District of California executed the arrest and search warrants referred to above
20  (as well as others not mentioned in this Affidavit).

21  **A.**    **Probable Cause for SUBJECT VEHICLE 1 and SUBJECT DEVICES 1 through 7**

22       19.    On December 15, 2020, at approximately 6:00pm, GPS location data for
23  telephones used by Cesar VALDEZ-SANUDO showed that the devices were located at
24  29619 123rd Ave NE, Arlington, Washington (his primary residence).  Agents
25  established surveillance in the area.

26       20.    At approximately 1:45am., TFO William McCormick observed SUBJECT
27  VEHICLE 1, a red Infiniti G50 sedan bearing California license plate 7YZX345, leave.
28  Agents followed SUBJECT VEHICLE 1; GPS location data indicated that VALDEZ-

AFFIDAVIT OF TFO BRANDEBERRY - 6
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   SANUDO's telephones (TT147, TT150 and TT151) and ARREDONDO-VALDEZ's

2   phone (TT146) were moving in conjunction with the car.  Agents followed SUBJECT

3   VEHICLE 1 to the vicinity of the Angel of the Winds Casino (3438 Stoluckquamish

4   Lane, Arlington), then to 8808 115th Ave NE, Lake Stevens, Washington, where it

5   arrived at approximately 2:21am (as observed by TFO Ryan Hamilton via a stationary

6   surveillance camera).  VALDEZ-SANUDO maintains a "shop" at the Lake Stevens

7   property; it was among the locations for which agents had obtained a search warrant on

8   December 14, 2020.

9          21.    At approximately 3:04am, TFO Hamilton observed SUBJECT VEHICLE 1

10  depart the property at 8808 115th Ave NE, Lake Stevens.  GPS location data for

11  VALDEZ-SANUDO's telephones again moved in conjunction with the vehicle.  Agents

12  followed SUBJECT VEHICLE 1 to a coffee stand at 4104 Hoyt Ave, Everett, where it

13  stopped briefly.  The car then left and traveled south on I-5.

14         22.    At 4:10am, SUBJECT VEHICLE 1 arrived at the Snoqualmie Casino,

15  located at 37500 SE North Bend Way, Snoqualmie.  Shortly after it arrived, TFO

16  McCormick located SUBJECT VEHICLE 1, unoccupied, on the second level of the

17  parking garage.

18         23.    A few minutes later, SA Jared Gibb contacted security personnel at the

19  casino, and entered the security surveillance room.  Using surveillance cameras, SA Gibb

20  located VALDEZ-SANUDO and Jose ARREDONDO-VALDEZ on the casino floor.

21  VALDEZ-SANUDO was playing at various slot machines.  ARREDONDO-VALDEZ

22  was also playing slots and was sitting near (and conversing with) another man, later

23  identified as Joey Barnes.  A review of surveillance video from the parking garage

24  showed that VALDEZ-SANUDO had been the driver of SUBJECT VEHICLE 1,

25  ARREDONDO-VALDEZ was seated in the front passenger seat, and the Barnes was in

26  the backseat.

27         24.    At approximately 6:10am, agents entered the casino and established visual

28  surveillance of VALDEZ-SANUDO, ARREDONDO-VALDEZ and Barnes.  At 6:25am,

AFFIDAVIT OF TFO BRANDEBERRY - 7
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  agents arrested VALDEZ-SANUDO and ARREDONDO-VALDEZ, pursuant to the

2  aforementioned federal arrest warrants.  VALDEZ-SANUDO was holding a stack of U.S.

3  currency and had additional currency in his pants pocket, which was recovered by SA

4  Scott MacDonald.  VALDEZ-SANUDO had SUBJECT DEVICE 1 in his shirt pocket.

5  ARREDONDO-VALDEZ had SUBJECT DEVICE 2 on his person.  Agents also

6  detained Barnes, and another unindicted member of the DTO who had arrived at the

7  casino separately.

8          25.      Agents then searched SUBJECT VEHICLE 1 while VALDEZ-SANUDO,

9  ARREDONDO-VALDEZ and Barnes were present to observe.  During the search, agents

10  located a Draco .9mm assault rifle with an oil can attached to the muzzle as an

11  improvised suppressor.  The rifle was in the rear passenger area in front of the rear seat

12  and directly behind the front passenger seat.  It was loaded with an extended magazine

13  and a chambered round.  Agents noted that a second loaded extended magazine was taped

14  to the first magazine.  Agents also located a loaded Colt .45mm pistol on the driver's

15  floorboard area, tucked into the space between the console and the right side of the

16  driver's seat.  Also tucked into this space between the console and driver's seat, agents

17  located a wrapped-up ball of cellophane and a plastic heat-seal bag that appeared to have

18  been cut open.[1]  Det. Dan Rucker located a second magazine for this pistol in a tan

19  zipper/cooler case in the rear passenger compartment of SUBJECT VEHICLE 1.  SA

20  Scott MacDonald also located several bundles of currency inside the tan zipper/cooler

21  bag, and a bundle of currency in the glove compartment.  VALDEZ-SANUDO claimed

22  ownership of the currency.

23          26.      SA MacDonald also located a Kimber .38mm pistol in a blue leather zipper

24  bag located on the front passenger seat floorboard area.  The pistol was loaded with a full

25  magazine and a round chambered.  SA MacDonald also found SUBJECT DEVICES 5, 6,

26

27  _____

28  [1] This packaging was consistent with packaging used on numerous roughly one-pound methamphetamine packages found at VALDEZ-SANUDO's Arlington property.

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and 7 inside the blue leather zipper bag. Det. Rucker found SUBJECT DEVICE 3 in the

2   driver's door compartment, and SUBJECT DEVICE 4 in the center console.

3         27.    Agents were also aware from intercepted communications over TT158

4   (206-990-3762) used by VALDEZ-SANUDO, that on the previous night (December 15,

5   2020) VALDEZ-SANUDO and his spouse Yvette OLGUIN had accidentally switched

6   phones when they were at the Arlington property together.  During Session 6 over TT158

7   at 8:32pm, OLGUIN (using TT158) called VALDEZ-SANUDO at her (OLGUIN's) own

8   number (TT151/206-712-4185).  During this call, OLGUIN stated that she was looking

9   for her phone (TT151) and thought it may have fallen out of her car.  VALDEZ-

10  SANUDO told her that she had loaned it to him to look for his dog "King," who was

11  apparently lost on the Arlington property.  During this call, OLGUIN stated that the

12  phone she was currently using (TT158) was their son Enrique's.  At 11:24pm on

13  December 15, 2020, agents intercepted an incoming call (Session 1193) to TT150

14  (VALDEZ-SANUDO) from OLGUIN (TT158).  During this call, OLGUIN asked

15  VALDEZ-SANUDO not to forget her phone (TT151) when he came over, presumably to

16  OLGUIN's house at 4525 Grand Ave, Everett, Washington.  VALDEZ-SANUDO stated

17  that he did not have "it" on him but had left it in the car.  VALDEZ-SANUDO stated that

18  he was going to look for "Shamrock" and was waiting on "Joey" so that "Joey" could

19  take him (to find Shamrock, presumably).  VALDEZ-SANUDO told OLGUIN that if he

20  let "him" (Shamrock) slide then "they" would take advantage of him (VALDEZ-

21  SANUDO) and he (VALDEZ-SANUDO) would never let that happen.

22        28.    During Session 1210 over TT150 (1:07am on December 16, 2020),

23  VALDEZ-SANUDO called OLGUIN (TT158) again.  During this call, VALDEZ-

24  SANUDO stated that he was "working" and was going to "make a run to the big casino

25  and the small casino." VALDEZ-SANUDO told OLGUIN to pay attention to what he

26  was saying and repeated that he (VALDEZ-SANUDO) was going to "make a run" and

27  might see "the car" and "that guy" there.

28

AFFIDAVIT OF TFO BRANDEBERRY - 9
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

29.     Based on this information, agents believe "Joey" to be Joey Barnes, who had travelled with VALDEZ-SANUDO and ARREDONDO-VALDEZ to the Snoqualmie Casino. Agents also believe that VALDEZ-SANUDO intended to find and shoot/ kill "Shamrock," who either owed VALDEZ-SANUDO an unpaid debt or had stolen drugs, currency or assets from him.  This belief is supported by the firearms found in SUBJECT VEHICLE 1, and the fact that the firearms were being transported in a manner suggesting the need for immediate access  (i.e., the pistol tucked between the driver's seat and console and the rifle fitted with an oil filter suppressor in the back seat).

30.     The GPS location data for TT147 (VALDEZ-SANUDO) and TT146 (ARREDONDO-VALDEZ) showed the devices moved from the casino to the parking garage consistent with VALDEZ-SANUDO and ARREDONDO-VALDEZ's movements from their arrest inside the casino to the parking garage, where agents escorted them to search and process SUBJECT VEHICLE 1.  For this reason, agents believe SUBJECT DEVICE 1 to be TT147 and SUBJECT DEVICE 2 to be TT146.  GPS location data for TT150 and TT151 also coincided with VALDEZ-SANUDO's movements earlier in the evening of December 15/early morning of December 16, 2020 but the devices appear to have been shut off just prior to his arrival at the casino.  However, GPS pings for TT150 and TT151 later resumed, placing the devices at the casino.  Subsequent pings for these two phones reflected the movements of SUBJECT DEVICES 3-7 after the phones had been seized as evidence, indicating that TT150 and TT151 are two of the devices listed as SUBJECT DEVICES 3-7.

31.     As agents were primarily occupied with interviews and evidence collection at the time, they only searched the easily accessible areas of SUBJECT VEHICLE 1 and did not conduct the type of exhaustive search required to locate factory voids or other hidden compartments ("traps") used for concealing drugs or currency.

32.     For these reasons, agents believe the phones found on VALDEZ-SANUDO and ARREDONDO-VALDEZ (SUBJECT DEVICES 1 and 2), as well as the phones found inside SUBJECT VEHICLE 1 (SUBJECT DEVICES 3, 4, 5, 6, and 7) have been

AFFIDAVIT OF TFO BRANDEBERRY - 10
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  used in the commission and/or facilitation of drug transactions and money laundering

2  activity, and may contain records of these transactions as well as information indicating

3  ownership and usage. Agents also believe, given the empty drug packaging found in

4  SUBJECT VEHICLE 1 but lack of additional packages containing drugs for

5  redistribution, that SUBJECT VEHICLE 1 may contain additional drugs hidden in a trap

6  or natural void.  SUBJECT VEHICLE 1 was secured and left at the Snoqualmie Casino

7  parking garage until agents were able to transport it to a secure lot in Tacoma,

8  Washington by agents later that day (December 16, 2020).  SUBJECT DEVICES 1

9  through 7 have been in the secure custody of the DEA in Tacoma since their seizure on

10  December 16, 2020.

11  **B.    Probable Cause for SUBJECT VEHICLES 2 and 3**

12      33.      Shortly after VALDEZ-SANUDO and ARREDONDO-VALDEZ's arrests

13  on the morning of December 16, 2020, agents executed a warrant at VALDEZ-

14  SANUDO's residence at 21916 123rd Ave NE, Arlington, Washington.  That search

15  initially yielded two packages of suspected methamphetamine weighing approximately 4

16  pounds; multiple shrink-wrapped packages found to contain approximately 4 kilograms

17  of heroin; approximately 6,000 suspected fentanyl pills; 10 firearms, and approximately

18  10 additional pounds of methamphetamine.  Agents continued searching the property the

19  following day, and found approximately 47 additional pounds of methamphetamine, 2

20  additional kilograms of heroin, a package of approximately 10,000 additional suspected

21  fentanyl pills, and cash totaling approximately $310,000.  Aside from the 10 firearms, all

22  the drugs and the $310,000 in currency were buried in the ground around the property.

23  With respect to the buried US currency, agents found that the money had been shrink-

24  wrapped in bundles and secured inside a black plastic automotive shell, like those

25  typically found in a vehicle's engine compartment to encase batteries or air filters.  This

26  shell had been sealed with orange spray foam prior to burial.  Also at the property was

27  SUBJECT VEHICLE 2, a black Chevy Silverado with California license plate

28  DLR86963 that agents had seen VALDEZ-SANUDO driving to and from the Arlington

AFFIDAVIT OF TFO BRANDEBERRY - 11
USAO 2019R00460

1   property on December 15, 2020, in addition to SUBJECT VEHICLE 3, a silver Ford

2   Raptor with California license plate 12858A.  From surveillance, agents know VALDEZ-

3   SANUDO and ARREDONDO-VALDEZ both used SUBJECT VEHICLE 3.  Agents

4   noticed that some of the orange spray foam (like that on the buried shell) was visible on

5   the undercarriage of SUBJECT VEHICLE 3.

6       34.     Agents know from surveillance and intercepted communications that

7   VALDEZ-SANUDO typically directed redistributors to meet him and/or ARREDONDO-

8   VALDEZ at the Arlington property for drug transactions.  For example, on November 5,

9   2020 at 6:52pm (Session 558), VALDEZ-SANUDO (TT134) received a call from Steven

10  DELVECCHIO (425-238-8595).  During this call, VALDEZ-SANUDO asked

11  DELVECCHIO if he wanted "10 of those."  DELVECCHIO answered, "Yes, 10 pieces."

12  VALDEZ-SANUDO said that he would call his "primo" (cousin, a reference to

13  ARREDONDO-VALDEZ).  Later, at 7:02pm (Session 558), VALDEZ-SANUDO

14  (TT134) received a call from ARREDONDO-VALDEZ (TT136).  During that call,

15  ARREDONDO-VALDEZ advised that DELVECCHIO had arrived "there" (at the

16  property at 21916 123rd Ave NE, Arlington, Washington). VALDEZ-SANUDO told

17  ARREDONDO-VALDEZ to check to see if the "Raptor" was open and grab

18  (unintelligible) from "there" because VALDEZ-SANUDO was on his way.  At 7:04pm,

19  ARREDONDO-VALDEZ called back from TT136 (Session 559). VALDEZ-SANUDO

20  (TT134) told PRIMO to take "that" out and give 10 pieces to DELVECCHIO.

21  VALDEZ-SANUDO said there was some "shit" in the suitcase and told ARREDONDO-

22  VALDEZ to weigh 250 and just one "water."  VALDEZ-SANUDO added that

23  DELVECCHIO would give ARREDONDO-VALDEZ some money.

24      35.     Investigators believed this to mean that ARREDONDO-VALDEZ was at

25  the Arlington property and that VALDEZ-SANUDO was directing ARREDONDO-

26  VALDEZ to weigh out 250 grams of heroin for DELVECCHIO.  Agents know from

27  training and experience that one unit of measurement commonly used with heroin is what

28  is referred to by drug traffickers as a "Mexican ounce," which is 25 grams even instead of

AFFIDAVIT OF TFO BRANDEBERRY - 12
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  28 grams.  As a result, "250" would equate to 250 grams, or 10 ounces or "pieces" of

2  heroin, the amount DELVECCHIO requested.  VALDEZ-SANUDO also told

3  ARREDONDO-VALDEZ to provide DELVECCHIO with one "water," which agents

4  believe to reference one pound of methamphetamine.

5       36.    Although agents recovered a significant quantity of narcotics from the

6  Arlington property, much of it was buried in the ground.  Agents did not locate any

7  amount that would have been easily accessible for conducting the DTO's day to day

8  business.  Agents believe it unlikely that VALDEZ-SANUDO or ARREDONDO-

9  VALDEZ would attempt to access the drugs hidden underground throughout the property

10  in the presence of redistributors, for fear of the information spreading and leading to theft

11  or law enforcement discovery of the hidden items.  Agents also believe it unlikely that

12  VALDEZ-SANUDO or ARREDONDO-VALDEZ would continually unearth, separate,

13  and weigh out drugs for each individual redistributor.

14       37.    For these reasons and in addition to environmental factors prohibiting a

15  more exhaustive search of the vehicles upon the arrests of VALDEZ-SANUDO and

16  ARREDONDO-VALDEZ and execution of the Search Warrant at 21916 123rd Ave NE,

17  in Arlington, agents believe that additional drugs may remain concealed in natural voids

18  or other hidden compartments within SUBJECT VEHICLES 2 and 3 (and SUBJECT

19  VEHICLE 1). SUBJECT VEHICLES 2 and 3 were secured and stored in a secure facility

20  in Marysville, Washington until agents transported the vehicles to a secured facility in

21  Puyallup, Washington on January 5, 2021.

22       38.    Although agents conducted initial searches of SUBJECT VEHICLES 1-3,

23  agents believe a more exhaustive search is needed, in particular for hidden traps or voids,

24  to locate narcotics prepared by the DTO for daily transactions.

25       39.    SUBJECT VEHICLES 2 and 3 were secured and stored in a secure facility

26  in Marysville, Washington until agents transported the vehicles to a secured facility in

27  Puyallup, Washington on January 5, 2021.

28

AFFIDAVIT OF TFO BRANDEBERRY - 13
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## C.     Probable Cause for SUBJECT DEVICES 8 and 9

40.     On December 16, 2020 TFO Jeff Barrington assisted with the arrest of Aaron ALARCON-CASTANEDA and the execution of a search warrant at 4292 Walnut Ave #B, in Chino, California.  Agents had identified ALARCON-CASTANEDA through surveillance and intercepted communications as a supplier to VALDEZ-SANUDO, and as someone who coordinated and stored shipments of narcotics arriving from Mexico for transport to the DTO in Western Washington.  Count 2 of the Indictment referred to above charges VALDEZ-SANUDO and ALARCON-CASTANEDA with drug distribution based on the seizure of approximately 50 pounds of methamphetamine sent by ALARCON-CASTANEDA to VALDEZ-SANUDO in November 2020.

41.     At approximately 5:15pm, agents and officers from Riverside DEA and the Riverside County Sheriff's Office arrested Aaron ALARCON-CASTANEDA at 3812 Francis Ave, Chino, California while ALARCON-CASTANEDA was feeding horses at the property (agents had also obtained a warrant to search this property on Francis Ave). Agents conducted a search of ALARCON-CASTANEDA's person pursuant to the warrant described above and seized SUBJECT DEVICES 8 and 9.  ALARCON-CASTANEDA advised agents that his wife had gone to Mexico and that he (ALARCON-CASTANEDA) currently lived alone at 4292 Walnut Ave #B, Chino, California.  Agents confirmed his residence at 4292 Walnut Ave #B when agents searching the location found mail, banking documents and tax returns in the name "Aaron ALARCON-CASTANEDA" there.

42.     A search of ALARCON-CASTANEDA's residence produced six bundles of US currency wrapped in clear or green cellophane.  Two bundles were in a red wastebasket, one bundle was inside a Downy detergent container, and three bundles were in a red zippered lunch bag in the refrigerator.  The bundles totaled $66,500.  Agents are familiar with this method of money packaging as a method often used by drug traffickers to bundle currency.  The currency is then wrapped in plastic so that the currency can be concealed in hidden compartments and (drug traffickers believe) is less likely to be

1  detected by a drug or money sniffing K9.  Agents located a Browning 9mm pistol and
2  ammunition at ALARCON-CASTANEDA's residence.

3         43.     For these reasons, agents believe SUBJECT DEVICES 8 and 9 have likely
4  been used in the commission and/or facilitation of drug transactions and money
5  laundering activity and may contain records of these transactions as well as information
6  indicating ownership and usage.  SUBJECT DEVICES 8 and 9 were transferred from the
7  secure custody of the DEA in Southern California (where they were in law enforcement
8  custody since their seizure on December 16, 2020) to the DEA in Tacoma, where they
9  remain in secure custody.

10              **VI.    TACTICS USED BY DRUG TRAFFICKERS**

11         44.     Based upon my training, experience, and participation in this and other
12  investigations involving narcotics trafficking, my conversations with other experienced
13  investigators and law enforcement investigators with whom I work, and interviews of
14  individuals who have been involved in the trafficking of methamphetamine, heroin and
15  other narcotics, I have learned and know the following.

16         45.     It is common for drug dealers to possess narcotics, drug paraphernalia, and
17  other items which are associated with the sale and use of controlled substances such as
18  scales, containers, cutting investigators and packaging materials in their residences, stash
19  houses, storage units, garages, outbuildings and/or vehicles on their property.

20         46.     It is common for drug dealers to hide proceeds of illegal narcotics sales and
21  records of illegal narcotics transactions in secure locations within their residences, stash
22  houses, storage units, garages, outbuildings and/or vehicles on the property for their
23  ready access and to conceal them from law enforcement authorities.

24         47.     It is common to find papers, letters, billings, documents, and other writings,
25  which show ownership, dominion, and control of businesses, residences, and/or vehicles
26  in the residences, stash houses, storage units, garages, outbuildings and/or vehicles of
27  drug traffickers.

28

AFFIDAVIT OF TFO BRANDEBERRY - 15
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

48.     Drug traffickers often maintain large amounts of US currency in order to maintain and finance their ongoing illegal drug trafficking business.  Often, drug traffickers from other countries operating in the United States frequently use wire remitters and bulk cash transfers to transfer currency to co-conspirators living in other countries.  Drug traffickers also attempt to legitimize their cash drug proceeds.  To accomplish this goal, drug traffickers use financial institutions and their attendant services, securities, cashier's checks, safe deposit boxes, money drafts, real estate, shell operations, and business fronts.  Persons involved in drug trafficking and/or money laundering keep papers relating to these activities for future reference, including federal and state tax records, loan records, mortgages, deeds, titles, certificates of ownership, records regarding investments and securities, safe deposit box rental records and keys, and photographs.  I know from my training and experience that often items of value are concealed by persons involved in large-scale drug trafficking inside of safes, lock boxes, and other secure locations within their residences, outbuildings, and vehicles.

49.     Drug traffickers commonly have in their possession, on their person, and at their residences and/or in their storage units, firearms and other weapons, which are used to protect and secure a drug trafficker's drugs and cash proceeds from theft by other drug traffickers and/or criminals.  Sometimes, drug traffickers will accept firearms in lieu of cash as payment for drugs, since they can either use the firearms themselves or sell the firearms for cash.

50.     It is a common practice for drug traffickers to maintain records relating to their drug trafficking activities in their residences, stash houses, storage units, garages, outbuildings and/or vehicles.  Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" these items from their suppliers, such record keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances.  These records include "pay and owe" records to show balances due for drugs sold in the past (pay) and for payments expected (owe) as

AFFIDAVIT OF TFO BRANDEBERRY - 16
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  to the trafficker's suppliers and distributors, telephone and address listings of clients and

2  suppliers, and records of drug proceeds.  These records are commonly kept for an

3  extended period of time.

4        51.    Narcotics traffickers maintain books, records, receipts, notes, ledgers,

5  airline tickets, money orders, and other papers relating to the transportation and

6  distribution of controlled substances.  These documents whether in physical or electronic

7  form, are maintained where the traffickers have ready access to them.  These documents

8  include travel records, receipts, airline tickets, auto rental agreements, invoices, and other

9  memorandum disclosing acquisition of assets and personal or business expenses.  I also

10  know that such records are frequently maintained in narcotics traffickers' residences,

11  stash houses, storage units, garages, outbuildings and/or vehicles.

12                          **Cellular Phones or Wireless Communication Devices**

13        52.    Drug traffickers use mobile electronic devices including cellular telephones

14  and other wireless communication devices to conduct their illegal activities.  For

15  example, traffickers of controlled substances commonly maintain records of addresses,

16  vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or

17  telephone numbers of their suppliers, customers and associates in the trafficking

18  organization.  It is common to find drug traffickers keeping such records of said

19  associates in cellular telephones and other electronic devices.  Traffickers often maintain

20  cellular telephones for ready access to their clientele and to maintain their ongoing

21  narcotics business.  Traffickers frequently change their cellular telephone numbers to

22  avoid detection by law enforcement, and it is common for traffickers to use more than

23  one cellular telephone at any one time.

24        53.    Drug traffickers prefer cellular telephones because, first, they can be

25  purchased without the location and personal information that landlines require.  Second,

26  they can be easily carried to permit the user maximum flexibility in meeting associates,

27  avoiding police surveillance, and traveling to obtain or distribute drugs.  Third, they can

28  be passed between members of a drug conspiracy to allow substitution when one member

AFFIDAVIT OF TFO BRANDEBERRY - 17
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

leaves the area temporarily.  Since cellular phone use became widespread, every drug dealer I have interacted with has used one or more cellular telephones for his or her drug business.  I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business.

54.     Drug traffickers often document aspects of their criminal conduct through photographs or videos of themselves, their associates, their property, and their product. Drug traffickers usually maintain these photographs or videos on their cellular phones.

55.     Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes.  This includes the following:

        a.      The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone.  This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

        b.      The stored list of recent received calls and sent calls is important evidence.  It identifies telephones recently in contact with the telephone user.  This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts.  If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting.  Even if a contact involves a telephone user

AFFIDAVIT OF TFO BRANDEBERRY - 18
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user.  Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c.     Stored messages are important evidence, similar to stored numbers. Investigators can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

d.     Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user.  Pictures also identify associates likely to be members of the drug trafficking organization.  Some drug traffickers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs.  Also, digital photos often have embedded "geocode" information within them.  Geocode information is typically the longitude and latitude where the photo was taken.  Showing where the photo was taken can have evidentiary value.  This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

e.     Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

56.     Many wireless communication devices, including cellular telephones such as iPhones, iPads, Android phones, and other "smart phones," as well as tablet devices such as Apple iPads, may also be used to browse and search the Internet.  These devices may browse and search the internet using traditional web browsers such as Apple's Safari browser or Google's Chrome browser as well as through third-party applications such as Facebook, Twitter and others that also provide the ability to browse and search the

AFFIDAVIT OF TFO BRANDEBERRY - 19
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   internet.  Based on my training and experience, I know that internet browsing history may

2   include valuable evidence regarding the identity of the user of the device.  This evidence

3   may include online usernames, account numbers, e-mail accounts and bank accounts as

4   well as other online services.  Internet browsing history may also reveal important

5   evidence about a person's location and search history.  Search history is often valuable

6   evidence that may help reveal a suspect's intent and plans to commit a crime or efforts to

7   hide evidence of a crime and may also help reveal the identity of the person using the

8   device.

9       57.     Cellphones and other wireless communication devices are also capable of

10   operating a wide variety of communication applications or "apps" that allow a user to

11   communicate with other devices via a variety of communication channels.  These

12   additional communication channels include traditional cellular networks, voice over

13   internet protocol, video conferencing (such as FaceTime and Skype), and a wide variety

14   of messaging applications (such as SnapChat, WhatsApp, Signal, Telegram, Viber and

15   iMessage).  I know based on my training and experience that there are hundreds of

16   different messaging and conferencing applications available for popular cellular

17   telephones and that the capabilities of these applications vary widely for each

18   application.  Some applications include end-to-end encryption that may prevent law

19   enforcement from deciphering the communications without access to the device and the

20   ability to "unlock" the device through discovery of the user's password or other

21   authentication key.

22       58.     Other communication applications transmit communications unencrypted

23   over centralized servers maintained by the service provider and these communications

24   may be obtained from the service provider using appropriate legal process.  Other

25   applications facilitate multiple forms of communication including text, voice, and video

26   conferencing.  Information from these communication apps may constitute evidence of

27   the crimes under investigation to the extent they may reveal communications related to

28   the crime or evidence of who the user of the device was communicating with and when

AFFIDAVIT OF TFO BRANDEBERRY - 20
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   those communications occurred.   Information from these communication apps may also

2   reveal alias names used by the device owner that may lead to other evidence.

3   59.   Cellphones and other wireless communication devices may also contain

4   geolocation information indicating where the device was at particular times.  Many of

5   these devices track and store GPS and cell-site location data to provide enhanced

6   location-based services, serve location-targeted advertising, search results, and other

7   content.  Numerous applications available for wireless communication devices collect

8   and store location data.  For example, when location services are enabled on a handheld

9   mobile device, many photo applications will embed location data with each photograph

10  taken and stored on the device.  Mapping applications such as Google Maps may store

11  location data including lists of locations the user has entered into the

12  application.  Location information may constitute evidence of the crimes under

13  investigation because that information may reveal whether a suspect was at or near the

14  scene of a crime at any given moment and may also reveal evidence related to the identity

15  of the user of the device.

16  60.   Searching a cellular phone or wireless communication device is frequently

17  different than conducting a search of a traditional computer.  Agents and forensic

18  examiners will attempt to extract the contents of the cellular phone or wireless

19  communication device using a variety of techniques designed to accurately capture the

20  data in a forensically sound manner in order to make the data available to search for the

21  items authorized by the search warrant.  This may involve extracting a bit-for-bit copy of

22  the contents of the device or, if such an extraction is not feasible for any particular

23  device, the search may involve other methods of extracting data from the device such as

24  copying the device's active user files (known as a logical acquisition) or copying the

25  device's entire file system (known as a file system acquisition).  If none of these methods

26  are supported by the combination of tools available to the examiner and the device to be

27  searched, the agents and examiners may conduct a manual search of the device by

28  scrolling through the contents of the device and photographing the results.

AFFIDAVIT OF TFO BRANDEBERRY - 21
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# VIII.  CONCLUSION

61.     I am submitting this Affidavit in support of an application to search the items more fully described in Attachments A1 to A11.  Based on the information described  in this Affidavit, I believe these items have been used by Cesar VALDEZ-SANUDO, Jose Luis ARREDONDO-VALDEZ, and Aaron ALARCON-CASTANEDA to further their drug trafficking and money laundering crimes in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and 952, and Title 18, United States Code, Sections 924(c), 1956, and 1957, and that evidence of such, as described more particularly in Attachment B, will be found in these items.

62.     I am submitting this Affidavit and Application electronically in accordance with Local Criminal Rule 41(d)(3).

Respectfully submitted,

LUKE A. BRANDEBERRY
Task Force Officer
Drug Enforcement Administration

The above-named agent provided a sworn statement to the truth of the foregoing Affidavit by telephone on this ___6th___ day of January 2021.

J. RICHARD CREATURA
UNITED STATES MAGISTRATE
JUDGE

AFFIDAVIT OF TFO BRANDEBERRY - 23
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A1**

Vehicle Description: A red 2015 Infiniti G50 with California license plate 7YZX305 and vehicle identification number (VIN) JN1BV7AP9FM356613, registered to "Marqilla Marwan" at "1185 Peach Ave, El Cajon, CA."



AFFIDAVIT OF TFO BRANDEBERRY - 23
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A2**

2          Vehicle Description:  A black 2016 Chevy Silverado with California

3    license plate DLR86963 and vehicle identification number (VIN)

4    3GCPCREC8GG246619, registered to "Raymundo Alvarez Alvarez" at "5289 28th Pl

5    SW, Naples, FL."

6

7

8

9

10

11

12

13            

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**ATTACHMENT A3**

2

Vehicle Description:  A silver 2013 Ford Raptor with California license plate

3

12858A3 and vehicle identification number (VIN) 1FTFW1R62DFC87477, registered to

4

"Cesar Valdez Sanudo" at "4525 Grand Ave, Everett, WA."

5

6

7

8

9

10

11

12

13



14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **ATTACHMENT A4**

2      Item Description:  A black Samsung cellular telephone located in Cesar

3  VALDEZ-SANUDO's shirt pocket at the time of his arrest on December 16, 2020.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF TFO BRANDEBERRY - 26
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **<u>ATTACHMENT A5</u>**

2      Item Description:  A black LG cellular telephone located on Jose Luis

3 ARREDONDO-VALDEZ's person at the time of his arrest on December 16, 2020.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **ATTACHMENT A6**

2      Item Description:  A black Samsung cellular telephone located in the driver's door

3 of a red 2015 Infiniti G50 with California license plate 7YZX305 and vehicle

4 identification number (VIN) JN1BV7AP9FM356613.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF TFO BRANDEBERRY - 28
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A7**

Item Description:  A black LG cellular telephone with International Mobile Equipment Identity number 355041-61-323336-5 located in the center console of a red 2015 Infiniti G50 with California license plate 7YZX305 and vehicle identification number (VIN) JN1BV7AP9FM356613.

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**<u>ATTACHMENT A8</u>**

2      Item Description:  A black LG cellular telephone with International Mobile

3  Equipment Identity number 355041613860712, located in a blue, leather zipper bag

4  located on the front passenger seat floorboard area of a red 2015 Infiniti G50 with

5  California license plate 7YZX305 and vehicle identification number (VIN)

6  JN1BV7AP9FM356613.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTACHMENT A9**

Item Description:  A black LG cellular telephone with International Mobile

Equipment Identity number 355041613860738, located in a blue, leather zipper bag

located on the front passenger seat floorboard area of a red 2015 Infiniti G50 with

California license plate 7YZX305 and vehicle identification number (VIN)

JN1BV7AP9FM356613.

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**<u>ATTACHMENT A10</u>**

2

    Item Description:  A black LG cellular telephone with International Mobile

3

Equipment Identity number 354544116218974, located in a blue, leather zipper bag

4

located on the front passenger seat floorboard area of a red 2015 Infiniti G50 with

5

California license plate 7YZX305 and vehicle identification number (VIN)

6

JN1BV7AP9FM356613.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF TFO BRANDEBERRY - 32
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A11**

2      Item Description:  Two Apple iPhone Cellular telephones found in the possession of

3   Aaron ALARCON-CASTANEDA at the time of his arrest on December 16, 2020.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF TFO BRANDEBERRY - 33
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**
**Items to be seized**

From the items listed in Attachments A1 through A11 of this warrant, the government is authorized to search for and seize the following items, which are evidence and/or fruits of the commission of the following crimes:  distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846; use of a communications facility in furtherance of a felony drug offense in violation of Title 21, United States Code, Section 843(b); importation of controlled substances, in violation of Title 21, United States Code, Section 952; possession of firearms in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c); and laundering of monetary instruments in violation of Title 18, United States Code, Sections 1956 and 1957, including the following:

1)      Any suspected controlled substances, for example, methamphetamine, heroin, imitation oxycodone/opiate pills, and cocaine;

2)      Firearms and firearms-related items, including magazines, ammunition, holsters, and body armor, or other dangerous weapons;

3)      Cellular telephones and other communications devices including iPhones, smartphones, flip phones, and similar devices, which may be searched only for the following items:

- Assigned telephone number and identifying serial number (e.g., ESN, MIN, IMSI, IMEI);
- Stored list of recent received, sent, or missed calls;
- Stored contact information;
- Stored photographs and videos of narcotics, currency, guns or other weapons, suspected criminal activity, and/or the user of the phone or co-conspirators;

- Stored messages that relate to the above-enumerated federal crimes;
- Passwords, encryption keys, and other access information that may be necessary to access communication and financial accounts associated with the equipment or user of the equipment, but if agents find such passwords, encryption keys, and other access information they will seek a subsequent warrant before proceeding to access said communications and financial accounts;
- Evidence indicating how and when the cellular telephone or other communications device was accessed or used, to determine the geographic and chronological context of device access and use, in relation to the crimes under investigation and to the device user; and
- Evidence of the identities of and relationships between co-conspirators;

4)      Financial profits, proceeds and instrumentalities of trafficking in narcotics and money laundering, including US currency and other items of value;

5)      Paraphernalia for packaging, smuggling, processing, diluting, manufacturing, weighing, and distributing controlled substances, for example:  hidden compartments, scales, blenders, funnels, sifters, grinders, glass panes, mirrors, razor blades, plastic bags, heat sealing devices, and diluting agents such as inositol, vitamin B12, etc.;

6)      Books, records, receipts, notes, ledgers, and other documents relating to the distribution of controlled substances, money laundering, communications between members of the conspiracy, and evidence of the use of apparently legitimate businesses to disguise profits;

7)      Photographs, video tapes, digital cameras, and similar items depicting friends and relatives of the vehicle occupants, or suspected buyers or sellers of controlled substances, controlled substances, and assets derived from the distribution of controlled substances;

AFFIDAVIT OF TFO BRANDEBERRY - 35
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8)      Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances, and money laundering;

9)      Financial records relating to controlled substances income and expenditures of money and wealth, to wit:  money orders, wire transfer records, cashier's checks and receipts, bank account records, passbooks, tax records, safe deposit box keys and records, checkbooks, and check registers, as well as precious metals and gems such as gold, silver, diamonds, etc.;

10)     Items of personal property that tend to identify the person(s) in control or ownership of the vehicle, including canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys;

11)     Identification documents, including passports, visas, alien registration cards, any travel documents, immigration documents, driver's licenses, identification cards, and social security cards;

12)     Documents indicating travel in interstate and foreign commerce, to include airline tickets, notes and travel itineraries; airline schedules; gas receipts, bills; charge card receipts; hotel, motel, and car rental statements; correspondence with travel agencies and other travel related businesses; airline, rental car, and hotel frequent flier or user cards and statements; passports and visas; telephone bills; photographs of foreign locations; and papers relating to domestic and international travel; and

13)     Latent prints and identifying material from the vehicle and phones.

AFFIDAVIT OF TFO BRANDEBERRY - 36
USAO 2019R00460

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970